UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| CHRISTOPHER CHEATHAM, <br><br> Plaintiff, <br><br> v. <br><br> CRST INTERNATIONAL HOLDINGS, LLC; CRST EXPEDITED, INC. d/b/a CRST THE TRANSPORTATION SOLUTION, INC.; and CRST SPECIALIZED TRANSPORTATION, INC. d/b/a CRST SPECIALIZED SOLUTIONS, INC., <br><br> Defendants. | Case No. 1:24-cv-00109-MAR |

**DEFENDANT CRST INTERNATIONAL HOLDINGS, LLC'S ANSWER,
AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT,
AND DEMAND FOR JURY TRIAL**

Defendant, CRST International Holdings, LLC ("CRST International Holdings"), for its answer to Plaintiff's Class Action Complaint (ECF No. 1), denies every allegation of the Complaint except those specifically admitted as being true.

## I.
## ANSWER

### INTRODUCTION

1.     This is a class and collective action Complaint for fraudulent misrepresentation, unjust enrichment, forced labor, unpaid wages, liquidated damages, statutory fines, attorneys' fees and costs, and interest under the Iowa Code Annotated ("I.C.A."), Iowa common law, the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589 et seq., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.

**ANSWER** CRST International Holdings admits that Plaintiff seeks to bring this action on behalf of himself, individually, and all others similarly situated. CRST International Holdings denies that Plaintiff's claims have any merit, denies that Plaintiff is entitled to any relief, and denies the remaining allegations contained in paragraph 1 of Plaintiff's Complaint.

2.      Plaintiff Christopher Cheatham ("Mr. Cheatham" or "Plaintiff") is one of many people ("Plaintiffs" or "Plaintiff Drivers") recruited under false pretenses to receive "sponsored" training for a Commercial Driver's License ("CDL") and then forced by debt and threatened abuse of legal process to drive for CRST International Inc., and its related companies ("CRST") even though their compensation per hour was less than minimum wage.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 2 of Plaintiff's Complaint.

3.      Specifically, Plaintiff Drivers allege that (a) CRST made fraudulent representations, using false and misleading phone calls and advertising to induce drivers to enter into CRST's Commercial Driver's License Training and Repayment Agreement or similar arrangement; (b) CRST was unjustly enriched by the repayment agreement it forced Plaintiff Drivers to sign; (c) CRST deducted amounts from Plaintiff Driver wages in violation of I.C.A. § 91A.5(1); I.C.A. § 91A.5(2)(g) and I.C.A. § 730.5(6)(b); (d) Plaintiff Drivers were forced by debt and threat of legal process to drive for CRST in violation of the TVPA and the Iowa Human Trafficking Law; (e) CRST did not pay Plaintiff Drivers minimum wage for the hours they were due compensation in violation of Iowa law; (e) CRST did not pay Plaintiff Drivers minimum wage in violation of the FLSA.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 3 of Plaintiff's Complaint.

4.      All allegations in this Complaint are based on information and belief except for those allegations pertaining specifically to Plaintiff, which are based on his personal knowledge. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 4 of Plaintiff's Complaint.

## PARTIES

5.      At all relevant times, Plaintiff Christopher Cheatham ("Plaintiff" or "Mr. Cheatham") was and is a natural person residing in Las Vegas, Nevada.

**ANSWER**: CRST International Holdings admits that Plaintiff is a natural person, but lacks sufficient information to admit or deny Plaintiff's alleged residency and therefore denies the remaining allegations contained in paragraph 5 of Plaintiff's Complaint.

6.      Mr. Cheatham was an employee of CRST along with his similarly-situated co-workers subject to the class and collective action allegations of this Complaint, "Plaintiffs" or "Plaintiff Drivers."

**ANSWER**: CRST International Holdings admits Plaintiff was an employee of CRST Expedited, Inc. CRST International Holdings denies the remaining allegations contained in paragraph 6 of Plaintiff's Complaint.

7.      At all relevant times, Plaintiff Drivers were "employees" for purposes of Plaintiffs' claims under Iowa Law and the FLSA in that Defendants suffered or permitted them to work. I.C.A. § 91A.2(3)(a); 29 U.S.C. $ 203(e), (g).

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 7 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is

required. To the extent a response is required, CRST International Holdings admits that CRST Expedited, Inc. employed Plaintiff but denies the remaining allegations contained in paragraph 7 of Plaintiff's Complaint.

8.     Defendant CRST International Holdings LLC is the owner of CRST Expedited, Inc., and CRST Specialized Transportation, Inc.

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 8 of Plaintiff's Complaint.

9.     Defendant CRST International Holdings LLC controlled the policies and procedures of its subsidiaries.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 9 of Plaintiff's Complaint.

10.     Defendant CRST Expedited, Inc., does business as CRST The Transportation Solution, Inc.

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 10 of Plaintiff's Complaint.

11.     Defendant CRST Specialized Transportation Inc. does business as CRST Specialized Solutions.

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 11 of Plaintiff's Complaint.

12.     Collectively, all CRST entities herein, ("CRST" or "Defendants") are privately owned companies owned and operated by related individuals and entities for a common business purpose: transportation of freight for CRST customers.

4

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 12 of Plaintiff's Complaint.

13.     Defendant CRST Expedited, Inc. entered into the CRST Commercial Driver's License Training and Repayment Agreement with Plaintiff.

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 13 of Plaintiff's Complaint.

14.     Defendant "CRST The Transportation Solution, Inc. or CRST Specialized Solutions, Inc" made Mr. Cheatham a contingent offer of employment and underpaid Mr. Cheatham and Plaintiff Drivers.

**ANSWER**: CRST International Holdings admits that CRST Expedited, Inc. made a contingent offer of employment to Plaintiff but denies the remaining allegations contained in paragraph 14 of Plaintiff's Complaint.

15.     Defendants with their sister and parent companies have thousands of employee drivers and ex-drivers who signed the CRST Commercial Driver's License Training and Repayment Agreement or were subject to a substantially similar scheme.

**ANSWER**: CRST International Holdings admits that CRST Expedited, Inc. has employed and employs employee drivers who have entered into a Commercial Driver's License Training and Repayment Agreement. CRST International Holdings denies the remaining allegations contained in paragraph 15 of Plaintiff's Complaint.

16.     Defendants with their sister and subsidiary companies have annual revenue in excess of $1.7 billion.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 16 of Plaintiff's Complaint.

## JURISDICTION AND VENUE

17.     Plaintiff incorporates and realleges all paragraphs above.

**ANSWER**: For its response to paragraphs 1-16, CRST International Holdings incorporates, by reference, its responses to paragraphs 1-16 of the Complaint.

18.     Because Plaintiff's FLSA claims arise under federal law, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 18 of Plaintiff's Complaint, but denies that Plaintiff's FLSA claims have any merit.

19.     In addition, the Court has supplemental jurisdiction over Plaintiff's Iowa state-law claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact regarding Defendants' unlawful treatment of Plaintiff, and form part of the same case and controversy.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 19 of Plaintiff's Complaint.

20.     Venue is proper in this Court because Defendants are headquartered and operate within this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district. See 28 U.S.C. 8 1391(b).

**ANSWER**: CRST International Holdings admits that venue is proper in this Court for itself only because it is at home in this state for purposes of 28 U.S.C. § 1391(b). CRST International Holdings denies the remaining allegations contained in paragraph 20 of Plaintiff's Complaint.

## FACTUAL ALLEGATIONS

21.     CRST is in constant need of long-haul team drivers, an unpopular and grueling position.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 21 of Plaintiff's Complaint.

22.     CRST fills this need with a plan to force labor set out herein.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 22 of Plaintiff's Complaint.

23.     CRST induces vulnerable individuals--people who have never been truckers before and therefore do not know better--by means of high-pressure phone calls, print, radio, television and internet advertising to drive for them.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 23 of Plaintiff's Complaint.

24.     CRST's two key points in recruiting individuals are that (1) they will start off at $0.36/mile and (2) CRST will "sponsor" their training.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 24 of Plaintiff's Complaint.

25.     CRST knew or had reason to know that its marketing point that new drivers will be paid $0.36/mile was false.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 25 of Plaintiff's Complaint.

26.     CRST knew or had reason to know that it would in fact overcharge drivers for their training.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 26 of Plaintiff's Complaint.

*Mr. Cheatham's Experience*

27.     Mr. Cheatham was managing a men's clothing store in Las Vegas, Nevada at the beginning of 2022.

**ANSWER**: CRST International Holdings lacks sufficient information to admit or deny Plaintiff's alleged prior work experience and therefore denies the allegations contained in paragraph 27 of Plaintiff's Complaint.

28.     In the evenings he began searching for more long-term career prospects online.

**ANSWER**: CRST International Holdings lacks sufficient information to admit or deny the allegations contained in paragraph 28 of Plaintiff's Complaint and therefore denies the same.

29.     Mr. Cheatham came across CRST with its offer for "sponsored training" and input his phone number.

**ANSWER**: CRST International Holdings lacks sufficient information to admit or deny the allegations contained in paragraph 29 of Plaintiff's Complaint and therefore denies the same.

30.     Someone saying they were with CRST began calling him repeatedly, trying to convince him to join CRST and take advantage of the training.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 30 of Plaintiff's Complaint.

31.     The person told him that this was the career he needed-that he would immediately make money starting at $0.36 per mile driven and that this amount would go up every month.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 31 of Plaintiff's Complaint.

32.     This person told him that CRST would pay for his training to get the license he needed.

8

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 32 of Plaintiff's Complaint.

33.     Mr. Cheatham did not have his CDL so he signed up for CRST "sponsored" training.

**ANSWER**: CRST International Holdings admits Plaintiff did not have a CDL before entering into the Commercial Driver's License Training and Repayment Agreement. CRST denies the remaining allegations in paragraph 33 of Plaintiff's Complaint.

34.     Mr. Cheatham believed that "sponsored" meant that he would not be charged for the training.

**ANSWER**: CRST International Holdings lacks sufficient information to admit or deny Plaintiff's subjective understanding of what he believed "sponsored" meant and therefore denies the allegations contained in paragraph 34 of Plaintiff's Complaint.

35.     In reliance on CRST's representations, Mr. Cheatham quit his retail job to pursue working for CRST.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 35 of Plaintiff's Complaint.

36.     CRST sent him to attend Careers Worldwide, 45 South Main Street, Keenesburg, Colorado, for training for his CDL.

**ANSWER**: CRST International Holdings admits that Plaintiff attended truck driver training school at Careers Worldwide, 45 South Main Street, Keenesburg, Colorado. CRST International Holdings denies the remaining allegations in paragraph 36 of Plaintiff's Complaint.

37.     Mr. Cheatham had no right to choose which driving school he would attend.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 37 of Plaintiff's Complaint.

38.     CRST flew Mr. Cheatham to Keenesburg, Colorado, and for the first time, on the first day of training, Mr. Cheatham was given some very new information.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 38 of Plaintiff's Complaint.

      i.    *Wage Deduction Authorization*

39.     Before Mr. Cheatham was given an offer of employment by CRST, before Mr. Cheatham had commenced training, away from home, Mr. Cheatham was told he must sign a series of documents in order to commence training. The first was "Wage Deduction Authorization".

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 39 of Plaintiff's Complaint.

40.     Mr. Cheatham signed his Wage Deduction Authorization on March 28, 2022.

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 40 of the Complaint.

41.     Mr. Cheatham, now jobless and in a strange city, reliant on CRST for food and shelter, had no choice but to sign the Wage Deduction Authorization and the other documents put before him that day.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 41 of Plaintiff's Complaint.

42.     Mr. Cheatham's fellow Plaintiff Drivers were similarly situated and without choice.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 42 of Plaintiff's Complaint.

43.     The Wage Deduction Authorization indicates:

I hereby authorize CRST Inc. d/b/a CRST The Transportation Solution, Inc. ("CRST") to withhold from my weekly wages the total amount equaling $0.03 per Total Movement Mile which shall be withheld for the purpose of repaying my financial obligations under my CRST Commercial Driver's License Training and Repayment Agreement (the "Agreement"). ...I represent that this authorization is executed voluntarily and has not been made as a condition of my continued employment.

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 43 of Plaintiff's Complaint.

44.     This was the first time Mr. Cheatham found out that when CRST said it would sponsor his CDL training, it did not mean that it would pay for it. "Sponsored" did not mean "free.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 44 of Plaintiff's Complaint.

45.     Mr. Cheathem did not understand what "Total Movement Mile" meant.

**ANSWER**: CRST International Holdings lacks sufficient information to admit or deny the allegations contained in paragraph 45 of Plaintiff's Complaint and therefore denies the same.

46.     At the time Mr. Cheatham agreed to the Wage Deduction Authorization, he still believed that he would be making $0.36/mile and after the withholding he would still be paid $0.33/mile.

**ANSWER**: CRST International Holdings lacks sufficient information to admit or deny the allegations contained in paragraph 46 of Plaintiff's Complaint and therefore denies the same.

*ii.*     *Drug Test*

47.     On March 21, 2022, CRST International, Inc. ordered a standard criminal screening package on Mr. Cheatham.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 47 of Plaintiff's Complaint.

48.     On June 5, 2022, Mr. Cheatham submitted to drug testing at the behest of CRST. The name of the drug test was "Pre-Employment/Pre-Access Non-DOT Drug Test."

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 48 of Plaintiff's Complaint.

49.     The third party administering the drug test was called TPA ComplyFirst and was and is based in New Jersey.

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 49 of Plaintiff's Complaint.

iii.     _CRST Commercial Driver's License Training and Repayment Agreement_

50.     CRST, through the training school, also forced Mr. Cheatham to sign CRST Commercial Driver's License Training and Repayment Agreement ("Agreement") in order to commence training.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 50 of Plaintiff's Complaint.

51.     The Agreement asserts that the cost of the training Program is five thousand, seven hundred fifty dollars ($5,750.00).

**ANSWER**: CRST International Holdings admits that, in the Agreement, the cost of the training program including CDL training school tuition, transportation to the training school, lodging during training, up to two meals/day during training, federally required DOT physical and DOT drug test, hair drug test, CLP (Commercial Learner's Permit) Assistance, and other fees, costs and expenses was listed as $5,750.00.

52.     The amount that CRST actually paid Careers Worldwide (the driving school in Keenesburg, Colorado) for Mr. Cheatham's training is unknown.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 52 of Plaintiff's Complaint.

53.     Upon information and belief, the true cost of the "CDL training school tuition" is not $5,750 but rather around $2,000 to $2,500.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 53 of Plaintiff's Complaint.

54.     Further CRST illegally charged Plaintiff and Plaintiff Drivers via the Agreement. Included in the $5,750 that will be charged to drivers (at Para 2 of the Agreement) are:

> [t]ransportation to the training school; lodging during training, up to two meals/day during training, federally required DOT physical and DOT Drug test, hair drug test, CLP Assistance and other fees, costs and expenses incurred by CRST

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 54 of Plaintiff's Complaint.

55.     1.C.A. § 730.5 provides that employers may not charge employees for drug tests.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 55 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings denies the allegations contained in paragraph 55 of the Complaint.

56.     I.C.A §91A.5(1) provides that employers may not withhold employee's wages unless there is a lawful purpose accruing to the benefit of the employee.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 56 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings denies the allegations contained in paragraph 56 of the Complaint.

57.     I.C.A §91A.5(2)(g) provides that it is unlawful for employers to charge employees for costs of more than twenty dollars for an employee's relocation to the place of employment.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 57 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings denies the allegations contained in paragraph 57 of the Complaint.

58.     Besides forcing Mr. Cheatham and the Plaintiff Drivers to pay costs unlawfully charged, the Agreement seals Mr. Cheatham's fate. It informs Mr. Cheatham without choice that:

> CRST will deduct from his paycheck $0.03 per Total Movement Mile for 100,000 Total Movement Miles, totaling $3,000 (three thousand U.S. Dollars). Upon completion of 100,000 Total Movement Miles, CRST will waive the remaining balance of the $2,750.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 58 of Plaintiff's Complaint.

59.     Considering that CRST was willing to forgive $2,750 of the cost if Plaintiff and Plaintiff Drivers drove 100,000 miles with CRST, it is extremely unlikely that the program cost CRST more than $3,000.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 59 of Plaintiff's Complaint.

60.     That makes $2,750, when it was charged by CRST, a usurious penalty charge and pure profit to CRST.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 60 of Plaintiff's Complaint.

61.     The threat of the usurious penalty charge is an abuse of legal process.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 61 of Plaintiff's Complaint

62.     Paragraph 4 of the Agreement states that:

[i]n the event You do not accept or are not offered employment with CRST, the total Cost of the Program (i.e. $5750) will be due and owing immediately upon demand of CRST. If your employment with CRST is voluntarily or involuntarily terminated, any remaining balance owed under the Note will be due and owing immediately upon demand of CRST. (emphasis added)

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 62 of Plaintiff's Complaint.

63.     Thus, CRST isolates potential drivers and pressures them to drive with the threat of involuntary termination and debt collection.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 63 of Plaintiff's Complaint.

64.     Termination, or failure to pass the CDL, would result in not only the Plaintiff Drivers having to pay back the funds on demand, if the debt went to a collections agency, they would have to pay 25% more as penalty or the "maximum percentage permitted by applicable law." Agreement Para. 15.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 64 of Plaintiff's Complaint.

65.     The Agreement gets worse. Plaintiff Drivers were not allowed to work for anyone else. Paragraph 7 of the Agreement states:

In exchange for CRST advancing the costs of the Program and other valuable consideration, You agree that you will not, without the written authorization of CRST, for a period of ten (10) calendar months after completion of the Program (the "Non-Compete Term") use the licensure You obtained as a result of the training obtained under this Agreement to provide driving services to any person or entity competing with CRST.

**ANSWER**: CRST International Holdings admits that the quoted portion of Paragraph 7 is accurate. CRST International Holdings denies the remaining allegations contained in paragraph 65 of Plaintiff's Complaint.

66.     Paragraph 8 of the Agreement states:

CRST shall be entitled to payment by You for all costs and expenses, including reasonable attorney fees, incurred by CRST in enforcing any provision of this Agreement. CRST shall also be entitled to pursue any other remedy available at law, including legal remedies available against any person or company who hires You in violation of this Non-Compete Agreement.

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 66 of Plaintiff's Complaint.

67.     Paragraph 9 of the Agreement allows CRST to hold the CDL certification of completion hostage and not provide it to drivers until they "have fully satisfied [their] repayment obligation to CRST, as set forth above," thus preventing them from working for other trucking companies and in that way forcing their labor for CRST.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 67 of Plaintiff's Complaint.

68.     Amazingly, Paragraph 17 of the Agreement provides that, if a driver does not inform CRST of a change of cell phone number, the driver must indemnify CRST for CRST's violations of the Telephone Consumer Protection Act, including CRST's attorneys' fees!

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 68 of Plaintiff's Complaint.

69.     And to ensure that it is impossible for a driver to ever challenge this unconscionable Agreement as a contract for forced labor or in violation of the FLSA, Paragraph 13 says that the signatory "expressly waives [their] ability to bring or maintain a class action or similar proceeding against CRST."

16

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 69 of Plaintiff's Complaint.

70.     Reliant on CRST for food and lodging, with no other employment, forbidden to work with other trucking companies and now in debt over five thousand dollars, Mr. Cheatham and other drivers, sequestered far from home, signed the Agreement, subject to one final unconscionable indignity:

> You acknowledge that you have had the opportunity for your own legal counsel to review this Agreement before signing.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 70 of Plaintiff's Complaint.

71.     Once Plaintiff Drivers had signed the Agreement, they were under the constant threat of abuse of legal process, CRST even forcing the Plaintiff Drivers to pay to defend CRST for its own illegal activity.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 71 of Plaintiff's Complaint.

72.     Such abuse of legal process is also apparent in the Promissory Note With Demand Feature, also signed March 28. 2022 ("Note").

**ANSWER**: CRST International Holdings admits that Plaintiff signed a Promissory Note on or about March 28, 2022. CRST International Holdings denies the remaining allegations contained in paragraph 72 of Plaintiff's Complaint.

73.     The Demand feature of the Note set out in paragraph 3 allows CRST to demand payment in full from Plaintiff Drivers at any time for reasons completely and solely in CRST's control.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 73 of Plaintiff's Complaint.

74.    After signing the Agreement and the Note, Mr. Cheatham and the other Plaintiff Drivers completed the CDL training.

**ANSWER**: CRST International Holdings admits that Plaintiff completed a driver training program. CRST International Holdings denies the remaining allegations contained in paragraph 74 of Plaintiff's Complaint.

<u>*Driving For CRST*</u>

75.    Mr. Cheatham began working for CRST the week of June 19, 2002.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 75 of Plaintiff's Complaint.

76.    On June 21, 2022, CRST provided Mr. Cheatham a "CRST Expedited Solutions Wage Verification" ("Verification").

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 76 of Plaintiff's Complaint.

77.    The Verification indicated that he would be making $0.36/mile.

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 77 of Plaintiff's Complaint.

78.    Like all other newly qualified drivers at CRST indebted to them, he was required to team drive.

**ANSWER**: CRST International Holdings admits that CRST Expedited, Inc. advised Plaintiff that it operated using team drivers. CRST International Holdings denies the remaining allegations contained in paragraph 78 of Plaintiff's Complaint.

79. Mr. Cheatham began team driving under a schedule of a truck "always moving." For six days, he would be in the truck nearly twenty-four hours a day. He would drive for eleven hours, be awake for five hours ("transition time") and be in his bunk for eight hours ("bunk time").

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 79 of Plaintiff's Complaint.

80. This was the pattern of driving for the Plaintiff Drivers.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 80 of Plaintiff's Complaint.

81. CRST was obligated to compensate Mr. Cheatham and the Plaintiff Drivers for all of their time except for the eight hours bunk time—sixteen hours a day.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 81 of Plaintiff's Complaint.

### *CRST Expedited Solutions Wage Verification*

82. On June 21, 2022, as part of On-Boarding, Mr. Cheatham signed the CRST Expedited Solution Wage Verification ("Wage Verification').

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 82 of Plaintiff's Complaint.

83. The Wage Verification is a self-contradictory document but confirms that as a new driver, Mr. Cheatham will receive $0.36 per mile. On the Wage Verification Form, Mr. Cheatham put an x by the box that indicated:

> I am a new driver who has signed a Financial Agreement in school. I will be in the CRST training program with a Driver Mentor. My wage rate will be .36 cents per mile. I will split miles with my Mentor and/or Co-driver.

**ANSWER**: CRST International Holdings admits that the quote from the Wage Verification Sheet is accurate. CRST International Holdings denies the remaining allegations contained in paragraph 83 of Plaintiff's Complaint.

84.     That was the first time, when it was too late to back out, that Mr. Cheatham was given a vague, confusing hint that the $0.36 may not be all his.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 84 of Plaintiff's Complaint.

<u>*Actual Wages*</u>

85.     However, when Mr. Cheatham referred to the Expedited Pay Scale in the Wage Verification, the amount that the Mentor would 'split' is not revealed, and only has an "X."

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 85 of Plaintiff's Complaint.

86.     It was therefore reasonable for Mr. Cheatham to continue to believe that he would be receiving $0.36 per mile less his 0.03 repayment.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 86 of Plaintiff's Complaint.

87.     However, when Mr. Cheatham received his first pay, he found out--for the first time--that he would be paid not $0.36 or $0.33 per mile but $0.12.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 87 of Plaintiff's Complaint.

88.     Mr. Cheatham therefore was paid around $5.00/hour.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 88 of Plaintiff's Complaint.

89.     Mr. Cheatham drove for CRST for about four months but could not make enough money to provide for his family.

**ANSWER**: CRST International Holdings admits that Plaintiff was CRST Expedited, Inc.'s employee for approximately four months. CRST International Holdings is without sufficient to admit or deny the remaining allegations and therefore denies the remaining allegations contained in paragraph 89 of Plaintiff's Complaint.

90.     CRST kept his last pay in its entirety as "repayment."

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 90 of Plaintiff's Complaint.

91.     CRST kept all ex-employee Plaintiff Drivers' last pay as "repayment" if they had received their training through CRST.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 91 of Plaintiff's Complaint.

92.     CRST pursued Plaintiff and all Plaintiff drivers for repayment.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 92 of Plaintiff's Complaint.

93.     CRST collected the total amount owed from Mr. Cheatham, so he paid the total of $5,750.00.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 93 of Plaintiff's Complaint.

94.     CRST pursued all drivers who left their employment and still "owed" them money.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 94 of Plaintiff's Complaint.

95.    That pursuit was abuse of legal process.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 95 of Plaintiff's Complaint.

### CLASS ACTION ALLEGATIONS
### Based On Iowa Law and TVPA

96.    Plaintiff incorporates and realleges all paragraphs above.

**ANSWER**: For its response to paragraph 96 of the Complaint, CRST International Holdings incorporates, by reference, its responses to paragraphs 1-95 of the Complaint.

97.    Plaintiff Drivers bring a nationwide class action on behalf of themselves and all other similarly situated members of the Class who have been similarly deprived of rights under the TVPA Iowa law by Defendants in the manner described in this Complaint. The Class that Plaintiffs seek to represent is composed of and defined as:

> All persons who are or have been an employee driver for CRST in the United States under a Commercial Drivers License Training and Repayment Agreement or similar written contract for training and employment ("Drivers") during the period commencing five (5) years prior to the filing of the Complaint through trial in this action.

**ANSWER**: CRST International Holdings admits that Plaintiff seeks to bring this action on behalf of himself and the proposed defined class. However, CRST International Holdings denies class treatment is proper, denies that Plaintiff is entitled to any relief, and denies the remaining allegations contained in paragraph 97 of Plaintiff's Complaint.

98.    At all relevant times, Plaintiff and Class Members were each an "employee" within the meaning of Iowa law. See I.C.A. 8 91A.2(3)(a).

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 98 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings admits that CRST

Expedited, Inc. employed Plaintiff, but denies the remaining allegations contained in paragraph 98 of Plaintiff's Complaint.

99.    At all relevant times, Defendants were "employers" of Plaintiff and Class Members within the meaning of Iowa law. See 1.C.A. 8 91A.2(4).

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 99 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings admits that CRST Expedited, Inc. employed Plaintiff, but denies the remaining allegations contained in paragraph 99 of Complaint's Complaint.

100.    Plaintiff reserves the right to modify or redefine "Class Members" for purposes of this action and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 100 of Plaintiff's Complaint.

101.    Class treatment of National Class Members is appropriate under Rule 23 for the following reasons:

A.    Numerosity: Class Members are so numerous that joinder would be impractical, and the disposition of their claims on a class (rather than individual) basis will conserve resources of the parties and judicial system. While the number of Class Members is unknown at this time, this information can be readily ascertained from Defendants' business records. Upon information and belief, Defendants employ, or have employed, over one thousand Class Members during the Class Period.

B.    Commonality: Common questions of law and fact exist and predominate as to Plaintiff and Class Members, including, but not limited to:

i.    Whether Defendants' treatment of Plaintiff and Class Members constituted "involuntary servitude" under 22 U.S. Code § 7102.8(a).

ii.    Whether the Agreement, Note, and other documentation constituted "threatened abuse of the legal process" under 22 U.S. Code § 7102.1.

iii.    Whether Defendants' collection efforts constituted "abuse of the legal process" under 22 U.S. Code § 7102.1.

iv.    Whether Defendants fraudulently misrepresented the terms and conditions of Plaintiff Drivers' employment prior to Plaintiff Drivers commencing training.

v.    Whether Defendants were unjustly enriched by charging Plaintiff Drivers $5,750 (or near that) for their CDL training.

vi.    Whether Defendants were unjustly enriched by charging Plaintiff Drivers for drug tests in violation of 1.C.A. 8 730.5.

vii.    Whether Defendants were unjustly enriched by withholding Plaintiff Drivers' wages without lawful purpose in violation of I.C.A §91A.(1)5.

viii.    Whether Defendants were unjustly enriched by charging Plaintiff Drivers in excess of $20 for their relocation in violation of I.C.A § 91A.5(2)(g).

ix.    Whether Defendants failed to pay Plaintiff Drivers minimum wage in violation of 1.C.A. §91D *et seq*.

C.    Typicality: Plaintiff's claims are typical of the claims of Class Members because Plaintiff and Class Members were subject to the same employment policies and

practices of Defendant during the Class Period, and each sustained damages. Proof of a common or single state of facts will therefore establish the right of Plaintiff and Class Members to recover.

D.      Adequacy: Plaintiff will fairly and adequately represent the interests of Class Members because Plaintiff is a Class Member and has the same legal and factual issues as Class Members and has no interests antagonistic to Class Members. Plaintiff has retained both local and national legal counsel competent and experienced in class actions, including labor and employment litigation. Plaintiff and his counsel are aware of their fiduciary responsibilities to Class Members and are determined to discharge those duties diligently by vigorously seeking the maximum possible recovery for Class Members.

E.      Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Plaintiff and each Class Member has been damaged and is entitled to recovery by reason of Defendants' violations of the Trafficking Victims Protection Act; illegal failure to pay Class Members minimum wage in violation of Iowa wage-and-hour law; Defendants' fraudulent misrepresentations inducing Class Members to enter into forced labor, and Defendants' unjust enrichment by overcharging for training and making illegal deductions to Class Members' pay. Class action treatment will permit a relatively large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the prosecution of individual lawsuits by each Class Member would present the risk of inconsistent and contradictory judgments, along with the potential for establishing inconsistent standards of conduct for Defendant

and other state employers. Consequently, an important public interest will be served by addressing this matter as a class action.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 101 of Plaintiff's Complaint.

## FLSA COLLECTIVE ALLEGATIONS

102.    Plaintiff incorporates and realleges all paragraphs above.

**ANSWER**: For its response to paragraph 102 of the Complaint, CRST International Holdings incorporates, by reference, its responses to paragraphs 1-101 of the Complaint.

103.    Plaintiff brings this action on behalf of himself and Federal Class Members as a collective action pursuant to 29 U.S.C. 8 216(b).

**ANSWER**: CRST International Holdings admits that Plaintiff seeks to bring this action on behalf of himself and the proposed defined collective pursuant to 29 U.S.C. 8 216(b). However, CRST International Holdings denies that collective treatment is proper, denies that Plaintiff is entitled to any relief, and denies the remaining allegations contained in paragraph 103 of Plaintiff's Complaint.

104.    Class Members are similarly situated to Plaintiff, and vice versa.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 104 of Plaintiff's Complaint.

105.    Plaintiff is similarly situated to Class Members based on the same factors of commonality, typicality, and adequacy enumerated above.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 105 of Plaintiff's Complaint.

106. At all relevant times, Plaintiff and Class Members were each an "employee" within the meaning of the FLSA. See 29 U.S.C. 8 203(e), (g).

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 106 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings admits that CRST Expedited, Inc. employed Plaintiff, but denies the remaining allegations contained in paragraph 106 of Plaintiff's Complaint.

107. At all relevant times, Defendants were "employers" of Plaintiff and Class Members within the meaning of the FLSA. See 29 U.S.C. § 203(d), (g).

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 107 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings admits that CRST Expedited, Inc. employed Plaintiff, but denies the remaining allegations contained in paragraph 107 of Plaintiff's  Complaint.

108. Plaintiff reserves the right to modify or redefine "FLSA Collective Members" for purposes of this action and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 108 of Plaintiff's Complaint.

109. Pursuant to 29 U.S.C. § 216(b), Plaintiff has filed his consent to join this FLSA collective action as of September 27, 2024. See attached Exhibit A.

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 109 of Plaintiff's Complaint.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Fraudulent Misrepresentation**

**(On Behalf of Plaintiff and the Class)**

110.    Plaintiff incorporates and realleges all paragraphs above.

**ANSWER**: For its response to paragraph 110 of the Complaint, CRST International Holdings incorporates, by reference, its responses to the preceding paragraphs of the Complaint.

111.    CRST represented to Plaintiff and Plaintiff Drivers that they would make $0.36/mile if they trained at a CRST school and drove with CRST.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 111 of Plaintiff's Complaint.

112.    CRST represented to Plaintiff and Plaintiff Drivers that their training would be "sponsored."

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 112 of Plaintiff's Complaint.

113.    CRST knew or should have known that "sponsored" meant, to the average listener, that CRST would pay for the training.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 113 of Plaintiff's Complaint.

114. CRST knew that Plaintiff and Plaintiff Drivers would not earn $0.36/mile when that representation was made.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 114 of Plaintiff's Complaint.

115.    CRST intended to deceive Plaintiff and Plaintiff Drivers that they would earn $0.36/mile.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 115 of Plaintiff's Complaint.

116.    CRST intended to deceive Plaintiff and Plaintiff Drivers that they would not have to pay CRST back for the training.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 116 of Plaintiff's Complaint.

117.    Plaintiff and Plaintiff Drivers did not make $0.36/mile.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 117 of Plaintiff's Complaint.

118.    Plaintiff and Plaintiff Drivers were obligated to repay CRST.

**ANSWER**: CRST International Holdings admits that Plaintiff was obligated to repay CRST Expedited, Inc. under the terms of the Agreement he executed in certain circumstances outlined in that Agreement. CRST International Holdings denies the remaining allegations contained in paragraph 118 of Plaintiff's Complaint.

119.    The representation that Plaintiff and Plaintiff Drivers would make $0.36 was material to their decision to work for CRST.

**ANSWER**: CRST International Holdings is without sufficient information to admit or deny the allegations contained in paragraph 119 of the Complaint therefore denies the same.

120.    The representation that Plaintiff and Plaintiff Drivers would have their training "sponsored" was material to Plaintiff and Plaintiff Driver's decision to attend training.

**ANSWER**: CRST International Holdings is without sufficient information to admit or deny the allegations contained in paragraph 120 of Plaintiff's Complaint and therefore denies the same.

121.    Plaintiff and Plaintiff Drivers acted in reliance on CRST representations about pay.

**ANSWER**: CRST International Holdings is without sufficient information to admit or deny the allegations contained in paragraph 121 of Plaintiff's Complaint and therefore denies the same.

122.    Plaintiff and Plaintiff Drivers acted in reliance on CRST representations about sponsoring their training.

**ANSWER**: CRST International Holdings is without sufficient information to admit or deny the allegations contained in paragraph 122 of Plaintiff's Complaint and therefore denies the same.

123.    CRST intended to deceive the Plaintiff and Plaintiff Drivers until the Plaintiff and Plaintiff Drivers had no real way to back out of the forced labor.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 123 of Plaintiff's Complaint.

124.    CRST's misrepresentations were the proximate cause of Plaintiff and Plaintiff Driver's damages. Plaintiff and Plaintiff Drivers were damaged.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 124 of Plaintiff's Complaint.

125.    Plaintiff and Plaintiff Drivers were damaged in an ascertainable amount.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 125 of Plaintiff's Complaint.

**WHEREFORE**, Plaintiff and Class Members demand payment by Defendants of their benefit-of-the-bargain damages and all other consequential damages, together with attorney's fees, costs, and interest as provided by law.

**ANSWER**: CRST International Holdings denies that Plaintiff is entitled to the relief sought in the First Cause of Action.

## SECOND CAUSE OF ACTION

### Deduction from wages in violation of I.C.A. § 91A.5(1)

### (On Behalf of Plaintiffs and the Class)

126.    I.C.A §91A.5(1) provides that employers may not withhold employee's wages unless there is a lawful purpose accruing to the benefit of the employee.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 126 of Plaintiff's Complaint.

127.    The lawful purpose of training the employee to pass the CDL should be valued at the amount CRST paid to the driver school, which is not known now but upon information and belief is $1,500.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 127 of Plaintiff's Complaint.

128. The remaining amount paid back by Plaintiff and Plaintiff Drivers, which constitutes profit to CRST, should be refunded.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 128 of Plaintiff's Complaint.

WHEREFORE, Plaintiff and Class Members demand payment by Defendants for all deductions made to their pay and damages due under I.C.A. § 91A.8, including "wages or expenses

that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages" and interest as provided by law.

**ANSWER**: CRST International Holdings denies that Plaintiff is entitled to the relief sought in the Second Cause of Action.

## THIRD CAUSE OF ACTION

### Deduction from wages in violation of I.C.A. § 91A.5(2)(q)

### (On Behalf of Plaintiffs and the Class)

129.    CRST charged Plaintiff and Plaintiff Drivers for "transportation to the training school, lodging during training, up to two meals/day during training, physical, and drug tests."

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 129 of Plaintiff's Complaint.

130.    These charges were relocation expenses.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 130 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings denies the same.

131.    I.C.A. § 91A.5(2)(g) provides that employers may not charge employees for relocation in amounts greater than $20.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 131 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings denies the same.

**WHEREFORE**, Plaintiff and Class Members demand payment by Defendants for all deductions made to their pay and damages due under I.C.A. § 91A.8, including "wages or expenses

that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages" and interest as provided by law.

ANSWER: CRST International Holdings denies that Plaintiff is entitled to the relief sought in the Third Cause of Action.

## FOURTH CAUSE OF ACTION

### Deduction from wages in violation of 1.C.A. § 730.5(6)(b)

### (On Behalf of Plaintiffs and the Class)

132.     I.C.A. § 730.5(6)(b) provides that "an employer shall pay all actual costs for drug or alcohol testing of employees and prospective employees required by the employer."

ANSWER: CRST International Holdings denies the allegations contained in paragraph 132 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings denies the same.

133.     CRST charged Plaintiff and Plaintiff Drivers for drug tests.

ANSWER: CRST International Holdings denies the allegations contained in paragraph 133 of Plaintiff's Complaint.

134.     The amounts that CRST charged Plaintiff and Plaintiff Drivers for drug tests should be refunded.

ANSWER: CRST International Holdings denies the allegations contained in paragraph 134 of Plaintiff's Complaint.

WHEREFORE, Plaintiff and Class Members demand payment by Defendants for all deductions made to their pay for drug tests and damages due under I.C.A. § 730.5(15)(a)(1) ("other equitable relief as the court deems appropriate including attorney fees and court costs").

**ANSWER**: CRST International Holdings denies that Plaintiff is entitled to the relief sought in Fourth Cause of Action.

## FIFTH CAUSE OF ACTION

### Forced Labor in Violation of the Trafficking Victims Protection Act 18 U.S.C. § 1589

### (On Behalf of Plaintiff and the Class)

135. Plaintiff incorporates and realleges all paragraphs above.

**ANSWER**: For its response to paragraph 135 of the Complaint, CRST International Holdings incorporates, by reference, its responses to paragraphs 1-134 of the Complaint.

136. The "fundamental purpose" of the Trafficking Victims Protection Act is to "reach cases of servitude achieved through . . . threatened abuse of legal process."

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 136 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings denies the same.

137. Under 18 U.S.C. $ 1589(a)(3), a plaintiff must show that the defendant "knowingly provide[d] or obtain[ed]" plaintiff's labor or services by means of. . . (3) "abuse or threatened abuse of law or legal process."

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 137 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings denies the same.

138. 18 U.S.C.A. § 1595 provides that "an individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of

this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney fees."

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 138 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings denies that the statute applies to the facts of this case.

139.    CRST obtained the services of Mr. Cheatham and Plaintiff Drivers by transporting them to a location away from their homes with fraudulent misrepresentations and then forcing them to sign a Repayment Agreement that was replete with threats of legal process against Plaintiff Drivers for failing to drive with CRST, failure to pay the excessive debt and failure to adhere to the illegal non-competition clause in the Agreement.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 139 of Plaintiff's Complaint.

**WHEREFORE**, Plaintiff and Class Members demand damages and reasonable attorneys' fees together with costs and interest as provided by law.

**ANSWER**: CRST International Holdings denies that Plaintiff is entitled to the relief sought in the Fifth Cause of Action.

### SIXTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of Plaintiffs and the Class)

140.    Plaintiff incorporates and re-alleges all paragraphs above.

**ANSWER**: For its response to paragraph 139 of the Complaint, CRST International Holdings incorporates here, by reference, its responses to paragraphs 1-139 of the Complaint.

141. CRST was enriched by the repayment by Plaintiff and Plaintiff Drivers of a debt that in large part should not have existed.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 141 of Plaintiff's Complaint.

142. In particular, the penalty charge of $2,750 constitutes unjust enrichment of CRST.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 142 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings denies the same.

143. In particular, the difference between the actual cost to CRST of driver training and the $3,000 base charge for the training constitutes unjust enrichment of CRST.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 143 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings denies the same.

144. Plaintiff and Plaintiff Drivers earned funds that were kept by CRST or collected by CRST at the expense of the Plaintiff and Plaintiff Drivers.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 144 of Plaintiff's Complaint.

145. It is unjust to allow CRST to retain the benefit of repayment in this circumstance.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 145 of Plaintiff's Complaint.

**SEVENTH CAUSE OF ACTION**

**Failure to Pay Minimum Wages in Violation of I.C.A. $ 91D.1, et seq.**

**(On Behalf of Plaintiff and the Class)**

36

146.    Plaintiff incorporates and realleges all paragraphs above.

**ANSWER**: For its response to paragraphs 1-145 of the Complaint, CRST International Holdings incorporates, by reference, its responses to paragraphs 1-145 of the Complaint.

147.    I.C.A. $ 91D.1 requires that each employer pay to its employee the state hourly wage, which since 2008 has been $7.25 for each compensable hour they spend at the employer's behest.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 147 of Plaintiff's Complaint to the extent they assert a legal conclusion to which no response is required. To the extent a response is required, CRST International Holdings denies the same.

148.    CRST had Plaintiff and Plaintiff Drivers working in teams and spending nearly twenty-four hours a day in a truck for six days per pay period.

**ANSWER**: CRST International Holdings admits that Plaintiff worked as a team driver for CRST Expedited, Inc. CRST International Holdings denies the remaining allegations contained in paragraph 148 of Plaintiff's Complaint.

149.    CRST had an obligation to compensate Plaintiff and Plaintiff Drivers for eleven hours of drive time, three hours of transition time and two hours of non-berth time, for a total of sixteen hours per twenty-four-hour period they were on the road.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 149 of Plaintiff's Complain.

150.    CRST intentionally compensated Plaintiff and Plaintiff drivers at a rate that fell below minimum wage for each hour of compensable time.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 150 of Plaintiff's Complaint.

151.	CRST intentionally paid Plaintiff Drivers well below the state hourly wage.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 151 of Plaintiff's Complaint.

**WHEREFORE**, Plaintiff and Class Members demand payment by Defendants at the regular hourly pay rate for Drivers or the minimum wage rate, and damages due under I.C.A. § 91A.8, including "wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages" and interest as provided by law.

**ANSWER**: CRST International Holdings denies that Plaintiff is entitled to the relief sought in the Seventh Cause of Action.

### EIGHTH CAUSE OF ACTION

### Failure to Pay Minimum Wages in Violation of the FLSA, 29 U.S.C. § 206

### (On Behalf of Plaintiff and the FLSA Collective)

152.	Plaintiff incorporates and realleges all paragraphs above.

**ANSWER**: For its response to paragraphs 1-151 of the Complaint, CRST International Holdings incorporates, by reference, its responses to paragraphs 1-151 of the Complaint.

153.	Under the FLSA, "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the [federal minimum wage rate]... " 29 U.S.C. § 206(a)(1).

**ANSWER**: CRST International Holdings admits the allegations contained in paragraph 152 of Plaintiff's Complaint.

154.    By paying newly qualified employee drivers $0.12/mile for sixteen-hour days of compensable work time, Defendants failed to pay Plaintiff and Collective Members at least federal minimum wage as required by the FLSA.

**ANSWER**: CRST International Holdings denies the allegations contained in paragraph 154 of Plaintiff's Complaint.

**WHEREFORE**, Plaintiff and Collective Members demand payment by Defendants at the federal minimum wage rate for all hours worked during the FLSA Period, plus an additional equal amount as liquidated damages, together with attorney's fees, costs, and interest as provided by law.

**ANSWER**: CRST International Holdings denies that Plaintiff is entitled to the relief sought in the Eighth Cause of Action.

## ADDITIONAL PRAYER FOR RELIEF

**WHEREFORE** Plaintiff, individually and on behalf of Class and Collective Members and all others similarly situated, prays for relief as follows:

1.    For an order certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class of Drivers;

2.    For an order conditionally certifying this action as a collective action under the FLSA on behalf of the Collective Class;

3.    For an order appointing Plaintiff as representative and his counsel as class counsel for the Class and FLSA Collective;

4.    For damages, according to proof for the regular rate of pay under applicable state or federal law for all hours worked;

5.    For liquidated damages and attorneys' fees according to proof for the minimum wage rate under I.C.A. 8 914.8;

6.      For wages or expenses that were intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages;

7.      For liquidated damages, pursuant to 29 U.S.C. § 216(b);

8.      For interest as provided by law at the maximum legal rate;

9.      For reasonable attorneys' fees authorized by federal law, Iowa law, common law, or equity;

10.     For costs of suit incurred herein;

11.     For pre-judgment and post-judgment interest at the maximum legal rate;

12.     For such other relief as the Court may deem just and proper.

**ANSWER**: CRST International Holdings denies that Plaintiff is entitled to the relief sought in this case.

## II.
## AFFIRMATIVE DEFENSES

CRST International Holdings, under Federal Rule of Civil Procedure 8(c), for its affirmative defenses to Plaintiff's Complaint, states as follows:

1.      The Complaint should be dismissed because it fails to state a claim upon which relief can be granted.

2.      Some or all of the claims for damages are barred, in whole or in part, by the failure to mitigate damages.

3.      Some or all of the claims for damages are barred, in whole or in part, by the doctrine of setoff.

4.      Some or all of the claims for damages are barred, in whole or in part, by the doctrine of recoupment.

5.     Some or all of the claims for damages are barred, in whole or in part, by the doctrine of payment.

6.     Some or all of the claims for damages are barred, in whole or in part, by accord and satisfaction.

7.     Some or all of the claims for damages are barred, in whole or in part, by the applicable statute of limitations.

8.     Some or all of the claims for damages are barred, in whole or in part because Plaintiff consented to the alleged conduct.

9.     Some or all of the claims for damages are barred, in whole or in part, by the doctrine of waiver.

10.     Some or all of the claims for damages are barred, in whole or in part, by the doctrine of estoppel.

11.     Plaintiff and Putative Class Members cannot pursue equitable remedies because they have adequate remedies at law.

12.     Plaintiff and Putative Class Members cannot pursue equitable remedies because they have elected to affirm their agreements, including their Commercial Driver's License Training and Repayment Agreement and Wage Deduction Authorization.

13.     This action does not meet the requirements for class or collective action treatment, and Plaintiff cannot satisfy the requirements for maintenance of a class or collective action, including, without limitation, ascertainability, predominance, typicality, adequacy, superiority, and being similarly situated.

14.     Some or all deductions or chargebacks were made for Plaintiff's and Putative Class Members' benefit.

15. Plaintiff and Putative Class Members lack an injury-in-fact for some or all of their claims and therefore lack standing under Article III of the U.S. Constitution.

16. Some or all of the claims are preempted by federal law, including but not limited to the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501 and the Federal Leasing Regulations, 49 CFR Part 376.

17. Some or all of the claims are barred or do not apply extraterritorially pursuant to the Dormant Commerce Clause and Iowa Code § 551A.2.

18. Plaintiff's claims are barred because they are an undue burden on interstate commerce in violation of the Commerce Clause of the U.S. Constitution, art. I, § 8, cl. 3.

19. Some or all of the claims are barred by an exception or exemption to Iowa Code § 551A.1 *et seq.*

20. CRST International Holdings will rely on all defenses lawfully available at the time of trial and reserve the right to amend its answer and affirmative defenses to include additional defenses after the completion of discovery.

21. Plaintiff and some or all the members of his putative class and collective waived any right to proceed on a class, collective, or representative basis.

22. Plaintiff's claims are barred, in whole or in part, because the alleged conduct occurred outside of the territorial jurisdiction of Iowa.

WHEREFORE, CRST International Holdings requests judgment as follows:

A. That this action not be certified as a class action;

B. That this action not be certified as a collective action;

B. That Plaintiff takes nothing by way of his Complaint;

C.    That judgment be entered against Plaintiff and in favor of CRST International Holdings;

D.    That CRST International Holdings be awarded their attorneys' fees and costs incurred in this case; and

E.    That CRST International Holdings be awarded all other necessary and proper relief.

## III.
## DEMAND FOR JURY TRIAL

Defendant CRST International Holdings, LLC demands a trial by jury on all issues so triable.

Dated: December 9, 2024

Respectfully submitted,

/s/ Angela S. Cash
James H. Hanson (pro hac vice)
Angela S. Cash (pro hac vice)
Andrew J. Ireland (pro hac vice)
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-492-9205
F: 317-684-2414
jhanson@scopelitis.com
acash@scopelitis.com
aireland@scopelitis.com

Kevin J. Visser
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
P: 319-366-7641
F: 319-366-1917
kvisser@spmblaw.com

*Attorneys for Defendant,*
*CRST International Holdings, LLC.*