## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF IOWA CEDAR
## RAPIDS DIVISION

| | |
|---|---|
| CHRISTOPHER CHEATHAM, on behalf of himself and all others similarly situated,<br><br>V.<br><br>CRST INTERNATIONAL HOLDINGS, LLC; CRST EXPEDITED, INC, d/b/a CRST THE TRANSPORTATION SOLUTION, INC.<br><br>Defendants. | Case No. 1:24-CV-109 |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CIRCULATION OF NOTICE PURSUANT TO 29 U.S.C. § 216 (b)

The Fair Labor Standards Act ("FLSA") was enacted by Congress in 1938 to protect the American labor force against substandard working conditions and to ensure American workers are fairly compensated for their time. *See* 29 U.S.C. § 216. The Plaintiff, Mr. Christopher Cheatham, has alleged violations of the FLSA on behalf of himself and other employees similarly situated. *See* Compl. ¶¶ 152-154. So that other employees can receive notice, Mr. Cheatham seeks conditional class certification of his FLSA claim as a collective action ("Conditional Certification") and requests court authorization and facilitation of notice to all putative collective action class members (collectively "Putative Collective Members" or "the FLSA Collective" or "Drivers") within 29 U.S.C. § 216(b) ("notice").

### I.        INTRODUCTION AND SUMMARY OF ARGUMENT

The instant case involves long-haul truckers who as employees of CRST trained and worked in very difficult conditions for less than minimum wage. Mr. Cheatham requests notice to

the Drivers so they can decide for themselves whether to join his FLSA claim. Courts across the country have found FLSA certification to be appropriate in cases, like this one, in which truck drivers working under materially similar operating agreements alleged they were illegally underpaid in violation of the FLSA. *See, e.g.*, *Canava v. Rail Deliv. Serv., Inc.*, 2020 WL 2510648, at *6-8 (C.D. Cal. Feb. 27, 2020) (certifying collective of truck drivers and holding that the "assertion that the Drivers all signed the Contract or a materially similar agreement . . . is sufficient to establish the Drivers are 'similarly situated'"); *Carter v. XPO Last Mile, Inc.*, No. 16cv1231-WH0, 2016 WL 5680464, at *3-6 (N.D. Cal. Oct. 3, 2016) (certifying collective of delivery drivers working under 5 different versions of delivery service agreements who allege that all agreements misclassified them as independent contractors, resulting in underpayment under the FLSA); *Collinge v. Intelliquick Deliv. Inc.*, No. 2:12cv824 JWS, 2015 WL 1292444, at *1-10 (D. Ariz. 2015) (refusing to de-certify the collective because they had signed the same agreements); *Flores v. Velocity Exp., Inc.*, 12-CV-05790-JST, 2013 WL 2468362 (N.D. Cal. June 7, 2013) ("Plaintiffs have alleged, and Defendants do not dispute, that each individual delivery driver signed an independent contractor agreement, subjecting them to a uniform company policy of treating them as exempt workers under FLSA."); *Scott v. Bimbo Bakeries, USA, Inc.*, CIV.A. 10-3154, 2012 WL 645905 (E.D. Pa. Feb. 29, 2012) (granting conditional certification to bakery delivery drivers who alleged they were misclassified as independent contractors and, as a result, failed to receive minimum wage and overtime); *Spellman v. Am. Eagle Exp., Inc.*, CIV.A. 10-1764, 2011 WL 4102301 (E.D. Pa. May 18, 2011) (same); *see also Ortega v. Spearmint Rhino Cos Worldwide, Inc.*, 2019 WL 2871156, at *7-9 (C.D. Cal. May 15, 2019) (granting conditional certification where all collective members worked pursuant to the same form contract which classified them as independent contractors); *Montoya v. CRST Expedited, Inc.,* 311 F. Supp. 3d 411, 415 (D. Mass. 2018) (granting conditional FLSA class certification to truck drivers who were recruited with a promise of sponsored commercial driver's license training, but then paid below minimum wage).

Like in the cases cited above, Mr. Cheatham alleges and has produced evidence that he and

members of the collective were all victims of the same unlawful policy, resulting in violations of the FLSA, evidenced on form contracts. Thus, Mr. Cheatham has satisfied his modest burden of showing that the members of the FLSA Collective are similarly situated with respect to the FLSA Collective's claim. Accordingly, he requests that this Court grant this motion for conditional certification and facilitate notice to Putative Collective Members.

## II. LEGAL STANDARD FOR CIRCULATING NOTICE OF THIS ACTION

The FLSA requires an employer to pay its employees at least a federally-mandated minimum hourly wage for all hours worked. *Montoya v. CRST Expedited, Inc.*, 311 F. Supp. 3d 411, 419 (D. Mass. 2018) (citing 29 U.S.C. § 206(a)). Recognizing the importance of protecting the American working person, it also provides a unique enforcement mechanism that allows "one or more" employees to bring a collective action against an employer on behalf of himself and other similarly situated employees. *See* 29 U.S.C. § 216(b). The statute provides in relevant part:

> *An action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.*

29 U.S.C. § 216(b). Courts in the 8th Circuit have employed a two-step approach to certify a collective action under the FLSA. *See Cervantes v. CRST Int'l, Inc.,* No. 20-CV-75-CJW-KEM, 2021 WL 7185079, at *4 (N.D. Iowa Jan. 25, 2021) (*Referencing e.g., Salazar v. Agriprocessors, Inc.*, No. 07-CV-1006-LRR, 2008 WL 782803, at *4–5 (N.D. Iowa Mar. 17, 2008)). "The two-step approach distinguishes between conditional class certification, generally made at the 'notice stage,' and a final class certification determination made after discovery is largely complete." *Id.* at *4 (quoting *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 577 (N.D. Iowa 2005)).

In the first step, conditional certification (or as Plaintiff's counsel believes is more accurately named, circulation of notice), a plaintiff moves to conditionally certify the action early

3

in the proceeding so that other potential plaintiffs can receive notice and decide for themselves if they would like to become party. *Id.* at \*4. Because the sole consequence of conditional certification is the facilitation of court-approved written notice to employees, the 8th Circuit applies a "lenient standard" to this analysis and requires that a plaintiff "merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Enger v. Thomas L. Cardella & Assocs., Inc.*, No. 20-CV-78-CJW-KEM, 2021 WL 5035045, at \*2 (N.D. Iowa Jan. 26, 2021) (quoting *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 892 (N.D. Iowa 2008)). The 8th Circuit courts emphasize as follows that at this initial step, conditional certification is warranted if there is a common policy in violation of the law, and an analysis of "similarly situated" is neither feasible nor required:

> *To meet this standard, plaintiffs must make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." A plaintiff need not show that the potential plaintiffs are actually similarly situated at this stage. (citations omitted).*

*Cervantes v. CRST Int'l, Inc.,* No. 20-CV-75-CJW-KEM, 2021 WL 7185079, at \*2 (N.D. Iowa Jan. 25, 2021). To determine if conditional certification is appropriate, the Court must determine whether plaintiffs have provided some factual basis and enough supporting evidence to find that they and other potential plaintiffs were harmed under the same policy or plan in violation of the FLSA. *Cervantes v. CRST Int'l, Inc.,* No. 20-CV-75-CJW-KEM, 2021 WL 7185079, at \*4 (N.D. Iowa Jan. 25, 2021) (Citing *Bouaphakeo*, 564 F. Supp. 2d at 892; *Salazar*, 2008 WL 782803, at \*4–5).

This court has recently granted conditional certification against these very Defendants in an FLSA trucking case that is factually similar to the instant one, in which plaintiff truck drivers agreed to form operating agreements as a condition of employment, but those operating agreements caused trucker compensation to fall below the minimum wage as a result. *See*

4

*Cervantes v. CRST Int'l, Inc.,* No. 20-CV-75-CJW-KEM, 2021 WL 7185079, at *4 (N.D. Iowa Jan. 25, 2021). Notably, the court held that conditional certification was appropriate because "[t]he fact that all these Drivers were subject to the [operating agreements] and the [operating agreements] allegedly created a scheme that allegedly often caused their compensation to fall below the minimum wage is sufficient at this stage." *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM, 2021 WL 7185079, at *4 (N.D. Iowa Jan. 25, 2021).

Under the FLSA, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (citations omitted). Thus, under the first step, district courts merely provide notice of the opportunity to join potential plaintiffs "in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Once conditional certification is deemed to be appropriate, "the Court has discretion to facilitate the opt-in process and authorize court-supervised notice to potential opt-in plaintiffs." *Frazier v. PJ Iowa, L.C.*, 337 F. Supp. 3d 848, 861–62 (S.D. Iowa 2018); *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 939 (D. Minn. 2009) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). The goal of the notice process is to ensure potential plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so they can make informed decisions about whether to participate." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (*citing Hoffmann-La Roche*, 493 U.S. at 170).

Although the 8th Circuit does not dictate the precise form for notice, courts routinely approve best practices given the goal - letting folks know, so they can decide for themselves. The

8th Circuit has also recently approved notice in a similar case, and Plaintiff proposes notice modeled thereafter. Courts certifying collective actions involving truck drivers routinely grant opt-in periods ranging from 90 to 150 days. *See, e.g.*, *Elmy v. Western Express, Inc.*, 2019 WL 6715115, at *1 (M.D. Tenn. Dec. 10, 2019) (120 days); *Huddleston v. John Christner Trucking, LLC.*, No. 17cv549-GFK-FHM, 2018 WL 7373644, at *3 (N.D. Okla. May 1 2018) (90 days); *Brown v. Phenix Transp. W. Inc.*, No. 3:13cv781-WHB-RHW, 2016 WL 3648274, at *5 (S.D. Miss. Mar. 31, 2016) (150 days); *Gatdula v. CRST Int'l, Inc.*, 2012 WL 12884919, at *7 (C.D. Cal. Aug 21, 2012) (90-days); *Mowdy v. Beneto Bulk Transp.*, No. C06-5682 MHP, 2008 WL 901546, at *11 (N.D. Cal. Mar. 31, 2008) (90 days). Courts recognize unique challenges in reaching over-the-road truck drivers so routinely approve multiple forms of notice, including mail, email, and reminder cards. *See Haworth v. New Prime, Inc.*, 2020 WL 1899276, at *2 (W.D. Mo. Apr. 16, 2020) (mail, email, and reminder notice); *Elmy,* 2019 WL 6715115, at *3 (mail, email, and reminder notice); *Ortega,* 2019 WL 2871156, at *8 (mail, email, and text reminder); *DeLaRosa v. J&GK Props., LLC*, 2019 WL 7067130, at *4 (E.D. Tex. Dec. 23, 2019) (mail, email, and reminder notices); *Davis v. Colonial Freight Sys., Inc.*, 2018 WL 2014548, at *4 (E.D. Tenn. Apr. 30, 2018) (mail and email notice); *Reyes v. Pier Enters. Grp, Inc.*, 2017 WL 10619856, at *5 (C.D. Cal. June 9, 2017) (mail, email, and reminder notice); *Warren v. MBI Energy Servs., Inc.*, 2020 WL 937429, at *9 (D. Colo. Feb.25, 2020) (mail and email notice); *Brown v. Phenix Transp. West, Inc.*, 2016 WL 3648274, at *4 (S.D. Miss. Mar. 31, 2016) (mail, email, and reminder post card); *Collado v. J & G Transp., Inc.*, 2014 WL 5390569, at *5 (S.D. Fla. Oct. 23, 2014) (mail and email). Finally, courts in the 8th Circuit regularly require defendants to provide contact information to facilitate best notice practices for those who are difficult to reach. *See Murray v. Silver Dollar Cabaret, Inc.*, 2017 WL 514323, at *6 (W.D. Ark. Feb. 8, 2017) (ordering production of telephone

numbers and authorizing plaintiff to contact by telephone class members whose mail notice is returned to obtain a good address); *See Wilson v. Agrileum LLC*, 2016 WL 11541229, at *4 (W.D. Tenn. Aug. 26, 2016) (Telephone numbers must be provided.); *See Nobles v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 5563444, at *2 (W.D. Mo. Nov. 15, 2011) (Telephone numbers and last four digits of social security are provided.).

### III.    PROCEDURAL AND FACTUAL BACKGROUND

#### A.    Procedural Background.

Plaintiff sent a letter to CRST introducing themselves and referencing wage and hour claims on February 15, 2024. *See* Ex. D. Defendants provided some employee records in response. Plaintiff filed a class and collective action against Defendants on October 8, 2024. *See* Compl. ECF No. 1 (hereinafter "Compl"). On a class basis, Mr. Cheatham alleges human trafficking in violation of TVPA, certain violations of Iowa employment law and common law claims of unjust enrichment and fraudulent misrepresentation. On a collective basis, Mr. Cheatham alleges that Defendants failed to pay minimum wages in violation of the FLSA, 29 U.S.C. Section 206. *See id.* CRST was first sued for its training program and subsequent wage theft from drivers in. 2016 so it has been on notice for nine years as to the issues in this action. *See Montoya v. CRST Expedited, Inc.,* 311 F. Supp. 411 (D. Mass 2018)

#### B.    Factual Background: Common Facts Supporting Plaintiff's FLSA Claim for Conditional Certification

Mr. Cheatham is one of the myriad[1] new truckers whom CRST pressed into training to feed its endless appetite for keeping its trucks on the road twenty-four hours a day. He signed

---

[1] We do not have current statistics. However, CRST defendants has admitted in previous litigation that between January and July 2017, CRST undertook collection efforts on around

the same three form contracts as thousands of other trainees: a repayment agreement, a promissory note, and a wage deduction authorization. *See* Ex. F *"CRST Commercial Driver's License Training and Repayment Agreement"* (hereinafter "Repayment Agreement"); Ex. G "Promissory Note with Demand Feature" ("Promissory Note"); Ex. H "Wage Deduction Authorization" ("Wage Deduction"). Every trainee who passed the CDL and drove for CRST drove under the same contract and the same deductions. *See* Compl. ¶¶39-70;  Ex. E Cheatham Decl. ¶¶ 4-14. Every trainee was subject to the same deduction to cover driving school. *See id.* Every trainee was subject to the same mentor program, resulting in team driving with a co-driver. *See id.* Under these circumstances, no trainee for the first months of their training received minimum wage for twelve hours a day and they certainly did not receive minimum wage for sixteen hours a day. *See id.* These allegations create a factual basis to suggest -- Defendants systematically and intentionally underpay their long-haul truckers out of their wages, and get away with it because if the new truckers leave, they are instantly crippled with debt, a noncompete and won't get their CDL proof back from CRST. See Ex. F Repayment Agreement ¶ 9 ("You will not receive a graduation certification, diploma, CDL school records or other certification of completion unless/until You have fully satisfied your repayment obligation …."). These colleagues should have the opportunity to receive notice of this lawsuit and opt-in.

## IV.      <u>ARGUMENT</u>

### A. Conditional Certification

---

7,500 to 8,000 drivers' accounts, collecting approximately $250,000. During this span, 26 drivers paid their contract debt in full. Between December 2013 and April 2017, 23,340 individuals started Phase 1 of the Driver Training Program, while 13,306 signed Employment Contracts. Turnover rate for CRST drivers is high: For every 100 trucker jobs CRST needs to fill, it must hire 160 drivers. This statistic is not disclosed to drivers. See *Montoya v. CRST Expedited, Inc.,* 311 F. Supp. 3d 411, 417 (D. Mass. 2018).

Conditional Certification of the FLSA Collective is appropriate in the instant case because Mr. Cheatham has provided factual basis that he and his colleagues were harmed under Defendants' singular policy or plan, in violation of the FLSA. Ex. E Cheatham Decl. ¶¶ 4-28. Mr. Cheatham and his colleague Drivers were all victims of Defendants' constant need for low-paid drivers and plan to force labor from vulnerable individuals with high-pressure tactics. Compl. ¶¶ 58-68. Mr. Cheatham and his colleagues were recruited under false pretenses, geographically isolated, and presented with similar form documents, the CRST Onboarding Documents, as a condition of employment. *See id.* Under threat of legal process, they then performed "team driving" as CRST required of all newly-indebted drivers, according to CRST policy. *See id.* Mr. Cheatham and his colleagues were required to spend nearly twenty-four hours a day in an "always moving" truck, including eleven hours of driving, five hours of "transition time," and eight hours of "bunk time." *See id.* However, Mr. Cheatham and his colleagues were woefully underpaid for this grueling schedule, enclosed within the cab of a moving truck, and were not compensated for all of the hours they were on the job. *See id.* On average, Mr. Cheatham and his colleagues received on average a mere $5.00/hour. *See id.* This hourly wage is below the federally mandated minimum, in violation of the FLSA. *See* 29 U.S.C. §216. Plaintiff argues that this common policy, resulting in an FLSA violation, warrants conditional certification so that others have an opportunity to receive notice.[2]

## B. Class Action Waiver Inapplicable

---

[2] . At this early stage, it is of no moment that only Mr. Cheatham has submitted a Declaration. *Frazier v. PJ Iowa LC,* 337 F. Supp.3d 848, 876 *(S.D. Iowa 2018)* ("*See Davis v. NovaStar Mortg. Inc.*, 408 F.Supp.2d 811, 816 (W.D. Mo. 2005) (noting that in a prior case, the court granted conditional certification based on the single affidavit of one former employee); see also *Laroque v. Domino's Pizza, LLC*, 557 F.Supp.2d 346, 352 (E.D.N.Y. 2008) (noting that plaintiffs have a minimal burden of showing they are similarly situated to the potential class members)" )

Defendants attempt to thwart Mr. Cheatham's right to protection under Federal law through language that purports to limit his participation in a "class action or similar proceeding." *See* Ex. F – Repayment Agreement. Defendants drafted the language of the alleged waiver as follows:

> *You agree that you will not participate in any class action claims against CRST, its affiliates, or agents and must file a claim on an individual basis. You expressly waive your ability to bring, represent, join or otherwise maintain a class action or similar proceeding against CRST, its affiliates, or agents in any forum. By signing this Agreement, you accept this waiver and choose to have any claim decided individually.*

*See id*. This waiver language precluding class actions and 'similar proceedings' is inapplicable on its face to FLSA collectives, as the 8th Circuit has held that collective actions are not class actions and are not "similar proceedings" to class actions:

> There is no doubt that the opt-in/opt-out distinction represents "a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for [the] FLSA.

*Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870, 887 (N.D. Iowa 2008) (citing *Schmidt v. Fuller Brush Co.,* 527 F.2d 532, 536 (8th Cir.1975); *see Woodard,* at 187, 2008 WL 471552, at *9). Therefore, the Motion for Notice to the Collective must proceed and cannot be delayed by consideration of a waiver that is inapplicable on its face. Further, to the extent that it is not clear that collective actions are excluded, it is ambiguous and under Iowa law ambiguities must be construed against the drafter:

> Unlike many jurisdictions that relegate the *contra proferentem* rule to the status of 'tie-breaker,' Iowa takes a strong view of the rule, holding that ambiguous language is to be strictly construed against the drafter.

*Jones v Bankers' Trust Company* – F.Supp.3d --- 2024 WL 4815979 *5 (S.D. Iowa 2024) (citations omitted.) The purported class action waiver cannot apply to prevent Mr. Cheatham's collective action as that would be an ambiguity construed in favor of the drafter.

### C. Defining the Class

Mr. Cheatham seeks to represent the following "FLSA Collective" of similarly situated employees:

> *All employee drivers who signed the Repayment Agreement and drove for CRST at any time between March 28, 2022, and the date of this Order.*

### D. Content of the Notice

Mr. Cheatham's proposed notice to potential class members and proposed consent solicitation are attached. *See* Ex. A "Notice of Pending Collective Action Lawsuit. Under the Fair Labor Standards Act"*;* Ex. B *"Consent to Join Lawsuit Pursuant to 29 U.S.C. § 216(b)"*. This notice is similar to those recently approved by the 8th Circuit in similar cases. It neutrally describes the case at hand, Drivers' FLSA overtime claim, and recipient's opportunity to voluntarily opt-into the litigation. *See id.* The notice avoids any appearance of judicial endorsement of either party's position. *See id.* Plaintiff proposes an opt-in period of 120 days as in *Cervantes, supra.* This opt-in period is within the range of court-endorsed timeframes but appropriately toward the longer end, which will allow truck drivers who are frequently away from home for extended periods of time to receive the notice and make an informed decision.

### E. Method of Delivery

Plaintiff proposes to disseminate the notice by first-class mail, text and email, along with a reminder post-card (and reminder text and email) to be sent to those putative collective members who do not opt-in within 21 days of mailing. The Notice will be placed on a website which will allow filling out the consent and opting-in online. That website link will be texted to putative

11

collective members. A copy of the proposed reminder card is attached. *See* Ex. C *"Reminder Card"*. Mail, email, text and a reminder post-card are consistent with precedent and appropriate because potential class members are truck drivers who may be dispersed around the country, absent from their mailing addresses for extended periods, changed their phone numbers, moved or abandoned or changed email addresses.

### F. Defendants Must Provide Contact Information to Facilitate Discovery

To facilitate notice to the FLSA class, Plaintiff requests the Court to order Defendants to produce the following information for each FLSA Collective member: full name, last known address(es), email address(es), phone number and unique employee identification number. Plaintiff requests this information in electronic spreadsheet format, such as Excel, with each type of information appearing in a separate column. Plaintiff also requests that Defendants provide the last four digits of the social security number for any class member whose notice is returned as undeliverable. This information will be used by Plaintiffs' counsel to attempt to find more up-to-date addresses for such class members.

### G. Defendants' Willful Violations Warrant a Three-Year Collective Period for Notice Purposes

The regular two-year statute of limitations for FLSA claims may be extended to three years if an employer's violation is deemed "willful." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 128, 108 S. Ct. 1677, 1678, 100 L. Ed. 2d 115 (1988). The Supreme Court has held that an FLSA action "is "willful" if there is substantial evidence that the employer "knew or suspected that his actions might violate the FLSA"; *i.e.,* if he merely knew that the FLSA was "in the picture.""

*McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 128, 108 S. Ct. 1677, 1678, 100 L. Ed. 2d 115 (1988) (citing *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139).

The Complaint alleges Defendants' systematic underpayment in violation of the FLSA has been willful and that Defendants knew or should have known that their policies and practices are unlawful. *Complaint,* ¶¶ 152-154. Defendants systematically isolated and preyed upon vulnerable individuals, then enforced policies and practices that resulted in underpayment below minimum wage in violation of the law. A system that guarantees nonpayment of wages can hardly be unintentional.

An employer's violation of the FLSA is "willful" when it is on notice of FLSA requirements yet takes "no affirmative action to assure compliance." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Plaintiffs do not seek any finding that Defendants' conduct was willful at this stage. That determination is for summary judgment or trial. Plaintiffs simply argue that their pleading of willfulness is sufficient to extend the statute of limitations to three years for purposes of notice. This accords with sister court decision *Littlefield v. Dealer Warranty Services, LLC,* 679 F. Supp.2d 2014, 2019 (E.D. Missouri 2010) ("…[J]udicial economy is served by conditionally certifying larger, more inclusive class at this stage in the proceedings. Accordingly, the statute of limitations is a three-year period."). *See also Kautch v. Premier Communication* 504 F. Supp. 2d 685, 690 (W.D. Missouri 2007) (At this stage of litigation, justice is most readily served by notice reaching the largest number of potential plaintiffs…. [citations omitted] Therefore, any notice sent will assume a three-year statute of limitations.")

### H. The Court Should Toll the Statute of Limitations until Putative Class Members Have the Opportunity to Join this Lawsuit.

13

Plaintiff requests equitable tolling of the statute of limitations from the date the instant

motion is filed until the opt-in period begins so that the court can carefully consider this motion

without negatively affecting putative class members' rights under the FLSA. There is no class-

wide tolling on FLSA collective actions. Rather, the FLSA statute of limitations continues to run

on every potential "opt in" plaintiff's claim until their consent to join this Action is filed with the

Court. *See* 29 U.S.C. § 256 (a). Under the FLSA, "[a]n action is considered to be commenced,

for statute of limitations purposes, either (1) when the complaint is filed, if the plaintiff is named

in the complaint and filed a written consent to become a party at the time the complaint was

filed; or (2) on the date a consent to become a party was filed, if the plaintiff was either unnamed

in the complaint or failed to file a consent at the time the complaint was filed." *Bouaphakeo v.*

*Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 910 FN (N.D. Iowa 2008) (citations omitted). This

means that the statute of limitations clock is ticking on some drivers out there – before they even

know about this lawsuit and have a chance to join.

This Court has the authority to toll the statute of limitations, to stop the clock and give it

time to decide. "District courts in the Eighth Circuit 'commonly grant equitable tolling for the

time it takes the court to rule on a conditional certification motion'" and do so "so that potential

plaintiffs are not deprived of their right to relief merely because of the inherent delay involved

for a court to carefully consider and rule on a motion to certify a class." *Cervantes v. CRST Int'l,*

*Inc.*, No. 20-CV-75-CJW-KEM, 2021 WL 7185079, at *6 (N.D. Iowa Jan. 25, 2021) (citations

omitted). *See also Frazier v. PJ Iowa LC,* 337 F. Supp.3d 848, 876 *(S.D. Iowa 2018) ("* Finally,

regarding the limitations period, the Court will toll the statute of limitations from the date the

motion for conditional certification was filed on March 16, 2018, until the date the opt-in period

begins to run in order to account for court delay")

Tolling the statute of limitations would also prevent Defendants from receiving any benefit from unsuccessfully opposing the circulation of notice to Putative Class Members. In fact, allowing the FLSA's statute of limitations to continue running while Plaintiffs' Motion is being decided would encourage Defendants to oppose the Motion irrespective of its merits because, even if Defendants lose and notice is circulated, they will be subject to a shorter liability period because of their opposition. For similar reasons, there is no good faith reason for Defendants to oppose tolling during the pendency of dilatory pre-answer motions. Especially in this case, where Defendants' liability is plain.

Federal District Courts recognize the hardship to putative collective members of delay over which they have no control. For example, in *Lucas v. JJ's of Macomb,* 321 F. Supp. 3d 882 (C.D. Ill. 2018) the court permitted FLSA equitable tolling and suggested a fairness determination:

> *The substantial hardship suffered by the putative plaintiffs must be balanced with the potential prejudice that tolling could impose on the defendant. "As an equitable matter, the inquiry should focus on fairness to both parties. As part of the determination of the possible prejudice to the defendant, the court should ask whether the defendant was aware of the potential scope of liability when the complaint was filed.*

*Id* at 888. Here, Defendants are aware of the potential scope of liability because they have been litigating FLSA claims instead of paying drivers since *Montoya* began in 2016. Plaintiff sent his letter of representation nearly a year ago. *See* Ex. F. It is reasonable to toll the statute of limitations during the pendency of this motion and Plaintiff so requests that the statute of limitations be equitably tolled for Putative Collective Members until the opt-in period begins.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) should be granted: the Notice, Consent and Reminder should be approved (Exs. A- C) and Plaintiff's reasonable request that the Collective Period be three years and the statute of

15

limitations be tolled pending the deadline for Putative Collective Members to join this action

should be granted, as well as any other further relief the Court deems proper.


Respectfully Submitted,

DATED: February 12, 2025


*/s/Rachel Mariner*
Rachel Mariner
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Suite 130
Las Vegas, NV 89144
Tel: (725) 245-6056
rachel@rafiilaw.com
*Attorneys for Plaintiff*

Nathan Willems
Emily Shott Hood
RUSH & NICHOLSON, P.L.C.
115 First Avenue SE, Suite 201
P.O. Box 637
Cedar Rapids, IA 52406-0637
Tel: (319) 363-5209
nate@rushnicholson.com
emily@rushnicholson.com
*Attorneys for Plaintiff*

16

## CERTIFICATE OF SERVICE

The undersigned certifies, pursuant to LR 5(a), that a true and correct copy of this document was served electronically upon all parties to the above cause of action through the Court's ECF system to each of the attorneys of record herein at their respective addressees disclosed on the pleadings on February 12, 2025.

James H. Hanson
Angela S. Cash
Andrew J. Ireland
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
jhanson@scopelitis.com
acash@scopelitis.com
aireland@scopelitis.com

Kevin J. Visser
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
kvisser@spmblaw.com
*Attorneys for Defendants CRST International Holdings, LLC*

*/s/ Marcus Johnson*

An employee of RAFII & ASSOCIATES, P.C.